Larry W. Lee (State Bar No. 228175)
lwlee@diversitylaw.com
DIVERSITY LAW GROUP, P.C.
515 S. Figueroa St., Suite 1250
Los Angeles, CA 90071
(213) 488-6555
(213) 488-6554 facsimile

Edward W. Choi, Esq. SBN 211334          David Lee, Esq. SBN 296294
edward.choi@choiandassociates.com        david@davidjleelaw.com
LAW OFFICES OF CHOI & ASSOCIATES         DAVID LEE LAW
515 S. Figueroa St., Suite 1250          515 S. Flower Street, Suite 1900
Los Angeles, CA 90071                    Los Angeles, California 90071
Telephone: (213) 381-1515                T: (213)236-3536
Facsimile: (213) 465-4885                F: (866) 658-4722


Attorneys for Plaintiff and the Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL ANGEL SERRANO CASTILLO, as an individual and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   vs.<br><br>SHERATON OPERATING CORPORATION, a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.:  2:17-cv-07091-FMO (ASx)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:     August 22, 2019<br>Time:    10:00 a.m.<br>Ctrm:   6D<br>Judge:  Hon. Fernando M. Olguin |

1

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that at 10:00 a.m. on August 22, 2019, or as soon thereafter as the matter may be heard in Courtroom 6D of the United States District Court for the Central District of California, located at 350 W. 1st Street, 6th Floor, Los Angeles, CA 90012, will and hereby does move this Court for an Order finally approving the proposed class action settlement. Specifically, Plaintiff respectfully requests that the Court issue an Order granting final approval of the proposed class action settlement.

Given that this is a Motion for Final Approval of a settlement reached with Defendant SHERATON OPERATING CORPORATION ("Defendant"), Plaintiff does not anticipate that Defendant will oppose this Motion.

This Motion is based upon this Notice of Motion and Motion for Final Approval of Class Action Settlement, the attached Memorandum of Points and Authorities in Support, the accompanying Declarations of Edward W. Choi, Larry W. Lee, and Elizabeth Kruckenberg, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.

DATED:  July 18, 2019          LAW OFFICES OF CHOI & ASSOCIATES


By:   /S/ EDWARD W. CHOI
          Edward W. Choi, Esq.
          Attorney for Plaintiff and the Class

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## **Table of Contents**

**Page**

I.      **INTRODUCTION** ............................................................................1

II.     **SUMMARY OF ARGUMENT** .....................................................2

III.    **THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED
        TO AND SUCCESSFULLY CARRIED OUT** ...............................2

        A. Dissemination of Notice ..............................................................2

        B. One (1) Objection Has Been Filed and Ten (10) Exclusions Have Been
        Received to Date ................................................................................3

IV.     **THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED
        TO AND SUCCESSFULLY CARRIED OUT** ...............................3

V.      **LITIGATION HISTORY** ...............................................................3

VI.     **THE SETTLEMENT** .......................................................................5

VII.    **THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL
        APPROVAL** .......................................................................................6

        A. The Strength of Plaintiff's Case Supports Settlement .................7

        B. Risks, Expense, and Duration of Continued Ligation Supports Settlement 8

        C. The Settlement Amount Favors Settlement .................................8

        D. The Extent of Discovery Favors Settlement ...............................9

        E. The Recommendations of Counsel Favor Approval of the Settlement .....10

        F. The Class Has Responded Favorably to the Proposed Settlement.............10

        G. The Procedure Through Which the Settlement Was Achieved Supports
        Final Approval ................................................................................11

VIII.   **CAFA NOTICE** ..............................................................................13

IX.     **CONCLUSION** ...............................................................................13

i

---

1

## Table of Authorities

2

**Page**

3

**Federal Cases**

4 Armstrong v. Board of Sch. Dirs., 616 F.2d 305, 325 (7th Cir. 1980).................. 10

5 Bellinghausen v. Tractor Supply Co.,

6    No. 13-CV-02377-JSC, 2015 WL 1289342, at *6 (N.D. Cal. Mar. 20, 2015).... 9

7 Boyd v. Bechtel Corp., 485 F. Supp. 610, 622 (N.D. Cal. 1979)......................... 10

8 Carrington v. Starbucks Corp., 30 Cal. App. 5th 504 (2018)................................. 7

9 Chun–Hoon v. McKee Foods Corp.,

10    716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).............................................. 7, 10, 11

11 Churchill Vill. LLC v. Gen. Elec., 361 F.3d 566, 577 (9th Cir .2004) ................. 11

12 Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) ........................... 6

13 Dyer v. Wells Fargo Bank, N.A.,

14    2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014) ...................................... 7-11

15 Ellis v. Naval Air Rework Facility, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ............... 10

16 Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).................. 6, 7, 12

17 In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) ............. 8, 10

18 In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008)...... 10

19 Joel A. v. Giuliani, 218 F.3d 132, 138 (2nd Cir. 2000).......................................... 6

20 Kirkorian v. Borelli, 695 F. Supp. 446, 451 (N.D. Cal. 1988) ............................. 10

21 Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998).............. 12

22 Moore v. Verizon Commc'ns Inc.,

23    2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013)........................................... 8

24 Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco,

25    688 F.2d 615, 625 (9th. Cir. 1982)............................................................... 11, 12

26 Pallas v. Pacific Bell, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999) .......... 10

27 Reed v. General Motors Corp., 703 F.2d 170, 175 (5th Cir. 1983)...................... 10

28 Rodriguez v. West Publishing Corp., 563 F.3d 948 (9th Cir. 2009) .................... 12

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

Williams v. Vukovich, 720 F.2d 909, 922-23 (6th Cir. 1983) ........................ 10, 12

**Statutes**

California Labor Code § 266 ............................................................... 3-5, 7

California Labor Code § 2698 ("PAGA") ................................... 1, 4, 5, 7

**Other Authorities**

4 Newberg on Class Actions § 11 (4th Ed. & Supp. 2002) .............................. 8, 12

Manual for Complex Litigation (Fourth)(2004) ......................................... 2, 11, 12

**Rules**

Federal Rule of Civil Procedure 23(e) ..................................................... 6

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

By this motion, Plaintiff MIGUEL ANGEL SERRANO CASTILLO ("Plaintiff") seeks final approval of a substantial class-wide settlement reached between Plaintiff and Defendant SHERATON OPERATING CORPORATION ("Defendant") (Plaintiff and Defendant collectively, the "Parties").

Plaintiff and Sheraton negotiated the Class Settlement by utilizing the total number of wage statements of approximately 87,678 wage statements (*See* Dkt No. 37, Stipulation to Modify the court's Order Re: Motion for Preliminary Approval of Class Settlement ("Stipulation to Modify") pg 3, lns 1-5) Each of the Settlement Class Members' share of the Net Settlement Amount was to be paid based on the number of applicable pay periods/wage statements (*Id.* at pg 2, lns 20-22) The Class Settlement results in a gross payout (before deduction for fees, costs, and PAGA payment) of approximately $17.50 per applicable pay period/wage statement, and a net payout of approximately $12.08 per applicable pay period/wage statement. (Declaration of Elizabeth Kruckenberg ("Kruckenberg Decl.") ¶ 11) On April 9, 2019, the Court entered an Order Granting Plaintiff's Motion for Preliminary Approval of Class Settlement (Dkt No. 38) ("Amended Prelim Order"). The Parties now seek this Court's final approval of the settlement.

The settlement requires Defendant to pay a total of One Million Five Hundred Thirty Five Thousand One Hundred Twenty Nine Dollars ($1,535,129.00), a sum which represents a substantial recovery for the members of the Class. **Again, this settlement is non-reversionary, such that no monies will revert back to Defendant.** As such, there was no claims process involved. Class members were given an opportunity to object or opt-out of the settlement. To date, there have been ten (10) opt outs and one (1) objection to the settlement.[1]

---

[1] Concurrently filed with this Motion is Plaintiff's Response to Daniel Kim's Objection to Class Settlement.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Accordingly, this shows that the overwhelming majority of class members have reacted favorably to the settlement. Moreover, all of this Court's orders concerning dissemination of Notice of the Settlement have been followed.

Based thereon, Plaintiff respectfully requests that final approval be granted in its entirety.

## II.     SUMMARY OF ARGUMENT

After litigation and discovery, including the production and analysis of significant documents and payroll data and mediation, the Parties were able to arrive at the current settlement. (Declaration of Edward W. Choi ("Choi Decl.") ¶¶3-6)

The detailed terms of the settlement are set forth in the Amended Joint Stipulation and Class Action Settlement Agreement and Release ("Settlement Agreement") entered into by the parties and previously provided to this Court. (Docket No. 37). Pursuant to the settlement terms, Defendant will pay the entirety (100%) of the settlement sum of $1,535,129.00 without any reversion to Defendant.

The proposed settlement meets the criteria for final approval which are set forth in the *Manual for Complex Litigation, 4th Ed.*, is well within the range of what would be fair, reasonable, and adequate in this case. Thus, Plaintiff requests that the Court take the final step in the approval process – granting the requested final approval of the settlement which is sought herein.

## III.     THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO AND SUCCESSFULLY CARRIED OUT

### A. Dissemination of Notice

As noted above, preliminary approval was granted on April 9, 2019. At that time, Phoenix Settlement Administrators ("Settlement Administrator") was appointed by the Court as the Settlement Administrator. The parties, through the work of the Settlement Administrator, have complied with this Court's orders

2

concerning dissemination of the class notice.  (Kruckenberg Decl. ¶¶ 2-11).

The Notice was mailed to the class of 4,649 individuals utilizing the data provided by Defendant.  (Kruckenberg Decl. ¶¶ 3-5).  Of those, only ninety-one (91) notices were returned with an invalid address. (Kruckenberg Decl. ¶6).  Out of these, seventy-seven (77) were mailed to updated addresses.  (Kruckenberg Decl. ¶¶6-7).

## B. One (1) Objection Has Been Filed and Ten (10) Exclusions Have Been Received To Date

The objection/exclusion deadline was on June 18, 2019.  As mentioned above, to date, one objection has been filed, there are 10 opt-outs of the current settlement and no outstanding disputes, further evidencing the favorable view of the settlement from class members.  (Kruckenberg Decl. ¶¶ 8-10).

## IV.    OVERVIEW OF ISSUES AND ARGUMENT

As discussed in detail in the previously filed Motion for Preliminary Approval (Dkt No. 36), and briefly mentioned above, the class claim at issue in this lawsuit arises out of Defendant's wage statements in violation of California Labor Code Section 226.  Specifically, Plaintiff alleged that whenever overtime or shift differential wages were paid, the corresponding wage statements failed to show the accurate rates of pay.

Defendant, however, strongly disagrees with Plaintiff's contentions and believe that Plaintiff's claims are without merit. In particular, Defendant contends that it has complied with the law.

## V.    LITIGATION HISTORY

On September 26, 2017, Plaintiff filed a putative class action Complaint in the United State District Court, Central, asserting claims against Defendant for alleged violation of the California Labor Code for failure to provide complete, accurate, or properly formatted wage statements and claims for interest, attorneys' fees and costs.  (Choi Decl. ¶ 3) Specifically, Plaintiff alleged that whenever

3

overtime or shift differential wages were paid, the corresponding wage statements failed to show the accurate rates of pay, in violation of Labor Code § 226(a). (Choi Decl. ¶3)

Thereafter, Plaintiff filed a First Amended Complaint, and subsequently thereafter, a Second Amended Complaint in include a PAGA cause of action, which is the operative complaint in this matter.  (Choi Decl. ¶ 4).  The Parties served their Initial Disclosures, propounded and responded to written discovery and engaged in an extensive meet and confer process regarding discovery.  (Choi Decl. ¶ 5).  The Parties also discussed resolution of this case through a private mediation.  In that regard, Defendant agreed to produce all of the data necessary for Plaintiff to conduct a thorough analysis for liability and damages.  (Choi Decl. ¶ 6).  Thereafter, the Parties engaged in a full day mediation with well respected mediator David Rotman.  (Choi Decl. ¶7). Based upon said mediation, the Parties reached a class-wide settlement of this case. (*Id.*)

On February 4, 2019, the Court entered an Order Granting Plaintiff's Motion for Preliminary Approval of Class Settlement. (Dkt No. 36)  However, immediately thereafter, based on Defendant's discovery of additional class members and applicable wage statements, the escalator clause was triggered requiring the modification of the original settlement, which included a substantial increase to the gross settlement amount.  In that regard, the Parties submitted the Amended Joint Stipulation and Class Action Settlement Agreement and Release, along with a stipulation for the approval of such, and on April 9, 2019, this court issued the Amended Order Granting Motion for Preliminary Approval of Class Settlement.

As the Court can see from the docket, from the time of filing to the instant settlement, this case has been vigorously litigated by both parties. The Parties have also exchanged data and documents, including the data for the entire class to permit Plaintiff to conduct a damage analysis. Further, the Parties have been

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

engaged in active settlement discussions during the pendency of this action.

## VI.    THE SETTLEMENT

The Settlement terms were summarized in detail in the Motion for Preliminary Approval and the subsequent stipulation to amend the Settlement Agreement, and Plaintiff respectfully incorporates those arguments herein so as to avoid unnecessary duplication. The specific terms of the settlement are set forth in the Settlement Agreement and the Amended Order Granting Motion for Preliminary Approval of Class Settlement.  (Dkt Nos. 37 and 38). The principal terms are:

a.    Settlement Class is "all persons who are employed or have been employed by Defendant as a non-exempt employee in California from September 26, 2016, to July 16, 2018, who based on Defendant's available records received a paper pay summary that reflected either overtime or shift differential pay."

b.    The Settlement Class is releasing:

> (a) any and all claims for failure to provide accurate wage statements pursuant to Labor Code § 226, and (b) all other civil and statutory penalties, including those recoverable under the Private Attorneys General Act, Labor Code Section 2698 et seq. based on the facts or claims alleged in the Second Amended Complaint ('Released Claims'). The Released Claims include without limitation claims meeting the above definition(s) under any and all applicable statutes, including without limitation any provision of the California Labor Code based on the facts or claims alleged in the Second Amended Complaint in the action; and any provision of the applicable California Industrial Welfare Commission Wage Orders based on the facts or claims alleged or litigated in the Second Amended Complaint in the Action."

c.    Defendant will pay a total Settlement Amount of $1,535,129.00.  This sum includes payments made to the settlement class members, settlement administration costs, awards of attorneys' fees and costs, the Service Award, and payment to the LWDA.

d.    The sum available for use for payments to class members after the settlement administration costs, awards of attorneys' fees and costs, the Service

5

Award, and to the LWDA shall be referred to as the Net Settlement Amount. Defendant agree that it shall pay the entirety (100%) of the Net Settlement Amount. **In other words, the settlement is non-reversionary, meaning that no funds will revert back to Defendant.**

e.    No claim forms were necessary for any class member to participate in the settlement and receive their share of the settlement.  Thus, any class member who does not opt-out in connection with this settlement will automatically receive his/her share of the settlement proceeds.  On average, each class member will receive approximately a payment of $227.94.  The highest individual settlement payment to be paid will be approximately $1,002.57 with the lowest being approximately $12.08.

f.    All of this Court's orders in connection with the settlement administration process have been followed.  (*See* Declaration of Elizabeth Kruckenberg filed herewith).

The settlement represents a compromise between the positions and evaluations of the two sides to this controversy. Clearly, there were significant disagreements between the Parties as to the facts and the law.

## VII.    THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive Court approval.  The court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion."  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000). In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned."  *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

The fairness, reasonableness and adequacy of any class action settlement depends on "the relative strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; ... and the reaction of class members to the proposed settlement." *Hanlon* 150 F.3d at 1026. Here, as set forth in the Motion for Preliminary Approval and discussed below, the factors for final approval of this settlement have been established.

### A. The Strength of Plaintiff's Case Supports Settlement

This factor is generally satisfied when plaintiffs must overcome barriers to make their case. *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). First, Plaintiff would have been required to prevail on a class certification motion, which is never a guarantee. Second, even assuming class certification could be achieved, Plaintiff would have been required to establish that the violations did in fact exist, and that such violations were due to Defendant's "knowing and intentional" conduct and that it resulted in "injury." *See* Labor Code § 226(e). Here, Defendant's continuously argued that they had a good faith defense, thereby negating any knowing and intentional element, and further, that no class members suffered any actual injury. Finally, even if a violation could be established, as to the PAGA claim, this Court has complete discretion to decrease any applicable penalties that could be assessed. Indeed, just recently, the California Court of Appeals upheld a decision wherein PAGA penalties were reduced by 90%. *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018).

Therefore, this factor favors settlement. See *Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014) (factor favors final approval where "[p]laintiffs acknowledge that, if the settlement is not approved, they will encounter significant obstacles in establishing their claims"); see *also*

7

*Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) (finding that the relative strength of plaintiffs' case favored settlement because plaintiffs admitted they would face hurdles in proving liability and damages).

### B. Risks, Expense, and Duration of Continued Litigation Supports Settlement

"Difficulties and risks in litigating weigh in favor of approving a class settlement." *Dyer*, 2014 WL 5369395, at *3 (citation omitted).  In addition to the obstacles set forth above, even if Plaintiff had prevailed at trial, there was a likelihood that Defendant would have appealed the verdict.  Thus, the risks, expense, and duration of continued litigation favor final approval of the settlement. *See Dyer*, 2014 WL 5369395, at *3 ("This factor supports final approval of this settlement because, without a settlement, Plaintiffs would risk recovering nothing after a lengthy and costly litigation.").

### C. The Settlement Amount Favors Settlement

The standard of review for class settlements is whether the Settlement is within a range of reasonableness.  As Professor Newberg comments:

> Recognizing that there may always be a difference of opinion as to the appropriate value of settlement, the courts have refused to substitute their judgment for that of the proponents. Instead the courts have reviewed settlements with the intent of determining whether they are within a range of reasonableness.…

4 Newberg on Class Actions, at §11.45.

Numerous courts have held that **gross** settlements approximating between only 8 and 25% of the defendant's potential exposure are fair and reasonable.  *See, e.g.*, *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir.2000) (holding that class action settlement recovering 16% of potential exposure was fair and reasonable; "[i]t is well-settled law that a cash settlement amounting to only a

8

fraction of the potential recovery does not per se render the settlement inadequate or unfair.  Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment"; noting that whether the settlement is fair and adequate depends on the "the difficulties in proving the case"); *Bellinghausen v. Tractor Supply Co.*, No. 13-CV-02377-JSC, 2015 WL 1289342, at *6 (N.D. Cal. Mar. 20, 2015) (holding that class action settlement recovering between 8.5% and 25% of the defendant's potential exposure was fair).

Here, the settlement fund is non-reversionary, such that 100% of the Net Settlement Amount will be available for distribution to class members who do not opt-out.  Moreover, the settlement does not require claim forms.  Rather, class members who did not opt-out will receive a check.  Further, the settlement fund will be paid out entirely in cash (as opposed to a voucher, coupon, etc.).  In addition, as set forth in the Settlement Agreement, the class release is expressly limited to the class and representative claims asserted in this case.  Significantly, based on the claims that were pled, Plaintiff estimated the potential liability exposure for Defendant is approximately $9 million before accounting for any of Defendant's defenses or Plaintiff's risk of loss. Thus, the Gross Settlement Amount of $1,535,129.00. comprises approximately 17% of the total potential exposure.

As such, this settlement should be viewed favorably.

**D. The Extent of Discovery Favors Settlement**

Here, settlement was reached following the exchange of significant written discovery, meet and confer process, and production and review of substantial amounts of data and documents.  The negotiations at all times were adversarial and non-collusive. Moreover, Plaintiff's counsel had the discovery necessary to ascertain the value of the class claims. Courts have held that such discovery is sufficient for parties to make an informed decision regarding the adequacy of the settlement.  *See*, *e.g.*, *Dyer*, 2014 WL 5369395, at *3 (parties' participation in

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

written discovery, depositions, witness interviews, and formal mediation favors an informed settlement); *Chun-Hoon*, 716 F. Supp. 2d at 848 (" true value of the class claims is well-known and class counsel possess a sufficient understanding of the issues involved and the strengths and weaknesses of the case"); *see also In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000) (formal discovery not necessary where the parties have sufficient information to make an informed decision about settlement).

## E. The Recommendations of Counsel Favor Approval of the Settlement

The recommendations of experienced counsel should be given considerable weight. *Boyd v. Bechtel Corp*., 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."); *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Reed v. General Motors Corp*., 703 F.2d 170, 175 (5th Cir. 1983); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983), *Armstrong v. Board of Sch. Dirs*., 616 F.2d 305, 325 (7th Cir. 1980).

Lead counsel for Plaintiff has broad experience litigating employment class actions. (Choi Decl. ¶ 12; Declaration of Larry W. Lee ("Lee Decl.") ¶¶7-9). They support this settlement as a fair and reasonable settlement which is in the best interest of the settlement class. (Choi Decl. ¶¶ 9-10; L. Lee Decl. ¶¶3-5). Therefore, this factor favors approval of the settlement. *See Dyer*, 2014 WL 5369395, at *3 (recommendation of plaintiffs' counsel supports approval of settlement); *Chun-Hoon*, 716 F. Supp. 2d at 848 (same).

## F. The Class Has Responded Favorably to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that" the settlement is favorable to class members. *In re Omnivision Techs., Inc*., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008), *see Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13,

10

1999) ("The greater the number of objectors, the heavier the burden on the proponents of settlement to prove fairness.").

Here, only one individual has objected and only ten individuals have opted out of this settlement. (Kruckenberg Decl. at ¶¶ 8-9). In other words, this settlement has less than 0.1% objection rate and a 0.22% opt out rate. (*Id.*) Thus, the low percentage of objections and opt-outs strongly support the fairness of the settlement. *See Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir .2004) (approving settlement with 45 objections and 500 opt-outs from a 90,000-person class, representing .05% and .56% of the class, respectively); *Dyer*, 2014 WL 5369395, at *4 (strong support from class in favor of approving settlement where only three of 8,695 class members opted out); *Chun–Hoon*, 716 F. Supp. 2d at 852 (where 16 of 329 class members opted out, court found that positive class reaction "strongly supports settlement").

### G. The Procedure Through Which the Settlement Was Achieved Supports Final Approval

The Ninth Circuit has recognized that the factors to be examined at final approval may differ depending on the circumstance of each case. *Officers for Justice*, 688 F.2d at 625. Therefore, although not one of the Officers for Justice listed factors, the procedures by which the settlement was achieved also strongly support the fairness of the settlement. *See Chun-Hoon*, 716 F. Supp. 2d at 851 ("To these factors, the court adds as a ninth factor to consider the procedure by which the settlement was arrived at"), citing *Manual for Complex Litigation* (Fourth) § 21.6 (2004). As noted above, the parties participated in an arm's-length negotiation, facilitated by a professional mediator with significant class action experience. This weighs in favor of approval of the settlement. *See Chun-Hoon*, 716 F. Supp. 2d at 851 (finding that use of formal arm's-length mediation supported approval of settlement agreement).

Further, the Ninth Circuit has shown longstanding support of settlements

reached through arms' length negotiation by capable opponents. In *Rodriguez v. West Publishing Corp*., 563 F.3d 948 (9th Cir. 2009), the Ninth circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties." *Id*. at 965, citing *Hanlon*, 150 F.3d at 1027.  The primary reason for deferring to such settlements is the experience of counsel and the participation of a neutral, both of which factors are present here.

The Court in *Rodriguez* found that the settling parties "put a good deal of stock in the product of an arms' length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested." *Rodriguez*, 563 F.3d at 965 (citations omitted).  As the Court explained, "[i]n reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Id*. at 965 (citations omitted).  *See also Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir.1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); *4 Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002); *Manual For Complex Litigation* (Fourth) § 30.42).

The proposed settlement has no deficiencies.  There is no standard or benchmark for determining whether any given settlement is fair. "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'"  *Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*, 688 F.2d 615, 625 (9th. Cir. 1982) (citation omitted).  In making its determination, the Court should weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("it is the very uncertainty of outcome in litigation and avoidance

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

of wasteful and expensive litigation that induce consensual settlements").

The settlement has been reached after considerable investigation, litigation, negotiation, and involving the mediation efforts of a highly experienced mediator. Each side evaluated the strengths and weaknesses of their case and independently came to the conclusion that this settlement represents a responsible means of addressing the claims of Plaintiff and the Class, as well as Defendant's contention that it would prevail on the merits.

## VIII. CAFA NOTICE

On or about April 24, 2019, pursuant to the Class Action Fairness Act of 2005, ("CAFA") Defendant provided notice of the proposed settlement. (*See* Declaration of Brian Long)

## IX. CONCLUSION

The parties have reached this settlement following extensive litigation, ongoing case discussions and arms-length negotiations. Plaintiff respectfully requests that the Court:

1.    Grant final approval of the proposed settlement;

2.    Order payment from the settlement proceeds to the Settlement Administrator in compliance with the Settlement Agreement;

3.    Grant the contemporaneously pending Motion for Approval of Attorneys' Fees and Costs and Representative Enhancement;

4.    Enter the proposed Final Approval Order and Judgment submitted herewith; and

///
///
///
///
///
///

13

1        5.    Retain continuing jurisdiction over the implementation, interpretation,

2    administration and consummation of the settlement.

3

4    DATED:  July 18, 2019        LAW OFFICES OF CHOI & ASSOCIATES

5

6                        By:   /S/ EDWARD W. CHOI      

7                            Edward W. Choi, Esq.
                        Attorney for Plaintiff and the Class

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**